## CASE NO. 12-5226

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA,**          **PLAINTIFF-APPELLEE,**

**vs.**

**CORNELIUS DEMORRIS BLEWETT,**      **DEFENDANT-APPELLANT.**

_____

## APPEAL FROM THE
## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
_____

## BRIEF FOR APPELLANT

> **s/ Jamie L. Haworth**
> **s/ Frank W. Heft, Jr.**
> **Office of the Federal Defender**
> **200 Theatre Building**
> **629 South Fourth Avenue**
> **Louisville, Kentucky 40202**
> **(502) 584-0525**
> **Jamie_Haworth@fd.org**
> **Frank_Heft@fd.org**
>
> **Counsel for Appellant.**

## Corporate Affiliate - Financial Interest Disclosure Statement

Appellant is an individual criminal defendant and, as such, is exempt from the requirements of 6 Cir. R.26.1.

# Table of Contents

Corporate Affiliate/Financial Interest Disclosure Statement. . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Cases, Statutes, and Other Authorities. . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Subject Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . 1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dorsey v. United States,* 567 U.S. __, 132 S.Ct. 2321 (2012) applies to a
case in which the defendant seeks a sentence modification pursuant to
18 U.S.C. §3582(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.  Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.  Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.  The Ruling in *Dorsey.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        3.  It Follows from *Dorsey* that the FSA Mandatory Minimums
        Apply to §3582(c)(2) Proceedings. . . . . . . . . . . . . . . . . . . . . . . 10
        4.  Principles of statutory construction support a reading
        of the Fair Sentencing Act (FSA) to apply retroactively in
        18 U.S.C. §3582(c)(2) proceedings. . . . . . . . . . . . . . . . . . . . . . 16

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Service............................................... 22

Appellant's Addendum and Designation of District Court Documents......... 23

## Table of Cases, Statutes, and Other Authorities

### Cases

*Bailey v. City of Lawrence,* 972 F.2d 1447 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . 16

*Clark v. Capital Credit & Collection Services,* 460 F.3d 1162 (9th Cir. 2010). . . 16

*Dorsey v. United States*, 567 U.S. __, 132 S.Ct. 2321 (2012). . . . . . . . . . . . *passim*

*Great N. Ry. Co. v. United States,* 208 U.S. 452 (1908). . . . . . . . . . . . . . . . . . . . . 20

*Hamm v. City of Rock Hill,* 379 U.S. 306 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . 19

*INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*John Hancock Mut. Life Ins. Co. v. Harris Trust and Savings Bank,* 510 U.S. 86 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mistretta v. United States,* 488 U.S. 361 (1989). . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Plata v. Schwarzenegger,* 603 F.3d 1088 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . 18

*Russello v. United States,* 464 U.S. 16 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Smith v. Chater,* 99 F.3d 780 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sosa v. Jones,* 389 F.3d 644 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sorrells v. United States,* 287 U.S. 435 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Bass,* 404 U.S. 336 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Bowers,* 615 F.3d 715 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 1

*United States v. Chambers,* 291 U.S. 217 (1934). . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Dixon,* 648 F.3d 195 (3rd Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Douglas,* 644 F.3d 39 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Fisher,* 646 F.3d 429 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Howard,* 644 F.3d 455 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Johnson,* 569 F.3d 619 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Payton*, 617 F.3d 911 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 5

*Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653 (1974). . . . . . . . . . . . 20

**Statutes**

1 U.S.C. §109.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

18 U.S.C. §3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a)(4)(A)(ii).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

18 U.S.C. §3582(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841(b)(1)(B)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

21 U.S.C. §851. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §991(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. §994(u). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

## Other Authorities

76 Fed. Reg. 41332-01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fair Sentencing Act (FSA) of 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FSA §2(a), 124 Stat. 2372. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FSA §8, 124 Stat. 2374. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Fed. Reg. 66191. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed.R.Crim.P. 11(c)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

H.R. 265, 11th Cong. §11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Pub.L. No. 111-220, 124 Stat. 2372 (Preamble). . . . . . . . . . . . . . . . . . . . . . 6

S.Rep. No. 98-223, p. 74 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sentencing Reform Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S.S.G. §1B1.11(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S.S.G. §3E1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Statement Regarding Oral Argument

Appellant believes that the issue is adequately set forth in his brief and that oral argument will not be of material assistance to the Court. Appellant therefore waives oral argument.

## Statement of Subject Matter and Appellate Jurisdiction

This is an appeal from a final order entered on February 21, 2012, that denied any reduction in appellant, Cornelius Blewett's, crack sentence. (Record (hereafter R.) No. 97, Order Denying Sentence Reduction). The district court had original jurisdiction pursuant to 18 U.S.C. §3231 and §3582(c)(2). This Court has jurisdiction of this appeal pursuant to 18 U.S.C. §3742. *See United States v. Bowers*, 615 F.3d 715, 722 (6th Cir. 2010) and *United States v. Howard*, 644 F.3d 455, 458 (6th Cir. 2011). Notice of Appeal (R. 100) was filed on February 29, 2012.

## Statement of the Issue

*Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321 (2012) applies to a case in which the defendant seeks a sentence modification pursuant to 18 U.S.C. §3582(c)(2).

## Statement of the Case

On October 20, 2004, an indictment was returned against appellant, Cornelius Blewitt, charging him with conspiracy tp possess  with intent to distribute cocaine and more than fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846; two counts of possession with intent to distribute 5 grams or more of crack cocaine; and one count of possession with intent to distribute cocaine, all in violation of 21 U.S.C. § 841. (Record (hereafter R.) No. 8, Indictment).  The government filed an

Information and notice of prior convictions, doubling the mandatory minimum sentence from 5 years to 10 years, pursuant to 21 U.S.C. § 851. (R. 20, Information and Notice).

The parties entered into a plea agreement, pursuant to Fed.R.Crim.P. 11(c)(1)(B), and on January 17, 2005, appellant pleaded guilty to the indictment. (R. 26, Plea Agreement; R. 103, Guilty Plea TR; R. 27, Order on Guilty Plea). Under the terms of the plea agreement, the Government agreed to "recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range [and] recommend a fine at the lowest end of the applicable Guideline Range ..." (R. 26, Plea Agreement; R. 103, Guilty Plea TR, p. 22). The Government further agreed to "a reduction of 3 levels below the otherwise applicable Guideline for 'acceptance of responsibility' as provided by [United States Sentencing Guideline (USSG)] §3E1.1(a). (R. 26, Plea Agreement; R. 103, Guilty Plea TR, pp. 12-13).

The Pre-Sentence Investigation Report (PSR)determined that appellant's base offense level was 26. (R. 38. PSR (sealed), ¶37). That was reduced  3 levels for acceptance of responsibility. (*Id*. at ¶ 44). Thus, the total offense level was 23. (*Id*. at ¶ 47). Appellant's criminal history category was VI.(*Id*. at 57). Consequently, he was subject to a Guidelines sentencing range of 92-115 months, however given the mandatory minimum he was subject to 120 months. (*Id*. at  ¶73).

On April 15, 2005, the Court dropped the offense level from 26 to 25 in accordance with the plea agreement. However, appellant was still subject to the mandatory 120 months and that is the sentence that was imposed. (R. 104, Sentencing Transcript (TR), pp. 4, 11). An 8 year term of supervised release was also imposed. *Id*. Judgment was entered accordingly (R. 39, Judgment and Commitment Order, pp. 3-4).

On February 21, 2012, the district court in response to the Fair Sentencing Act (FSA) of 2010 entered an order (R. 97) denying appellant a crack sentence reduction from the original mandatory minimum sentence of 120 months. Notice of Appeal was filed on February 29, 2012. (R. 100).

**Statement of the Facts**

The district court appointed counsel to represent appellant and ordered that he be provided with a Memorandum of Recalculation (MOR), the PSR, and the Judgment. (R. 90, Order re filing MOR).

The MOR, which was filed on January 4, 2012, noted that appellant was accountable for 20 grams of crack cocaine. The original Guidelines range was 120-137 months (total offense level 25; criminal history category VI). (R. 88, MOR, pp. 1-2). The mandatory minimum was 120 months. The amended Guidelines range under the FSA was 63 to 78 months (total offense level 19; criminal history category

VI) absent the mandatory minimum sentence of 120 months. *Id*. at 2. The MOR recommended that appellant's crack sentence not be reduced to under 120 months. *Id*. The MOR noted that the FSA eliminated the mandatory minimum sentence for the amount of crack cocaine appellant pleaded guilty to, but stated it was not retroactive. *Id*.

Defense counsel filed a Response (R. 93) to the MOR in which he urged the court to rule that appellant would not be subject to a mandatory minimum sentence of 120 months under the FSA and to impose a sentence of 63 months. The Court subsequently entered an order (R. 97) stating that the objections were overruled and denied Appellant's motion for a sentence reduction. Notice of Appeal (R. 100) was filed on February 29, 2012.

## Summary of Argument

The rationale underlying *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321 (2012) applies to a case in which the defendant seeks a sentence modification pursuant to 18 U.S.C. §3582(c)(2). To hold otherwise would produce sentences more disproportionate than if Congress had not enacted the Fair Sentencing Act at all.

The Court set forth six considerations in *Dorsey* that convinced it that Congress intended the Fair Sentencing Act's more lenient penalties to apply to offenders whose crimes preceded August 3, 2010, but who were sentenced after that date. Those six

considerations as well as rules of statutory construction support the conclusion that

*Dorsey* applies to cases in which the defendant seeks a sentence modification under

18 U.S.C. §3582(c)(2).

## Argument

**<u>Dorsey v. United States</u>, 567 U.S. ___, 132 S.Ct. 2321 (2012) applies to a case in which the defendant seeks a sentence modification pursuant to 18 U.S.C. §3582(c)(2).**

## A. Standard of Review

"Generally, this Court reviews the denial of a motion to modify a sentence

under 18 U.S.C. § 3582(c)(2) under the abuse-of-discretion standard." *United States*

*v. Payton*, 617 F.3d 911, 912 (6th Cir. 2010) (other citations omitted). If, however,

the district court "rules that it has no authority to reduce the defendant's sentence

under the statute, the district court's conclusion that the defendant is ineligible for a

sentence reduction is a question of law that is reviewed *de novo*." *United States v.*

*Johnson*, 569 F.3d 619, 623 (6th Cir. 2009) (other citations omitted). *See also United*

*States v. Payton*, 617 F.3d at 913.

## B. Discussion

### 1. Background

Although appellant was sentenced before the FSA went into effect on August

3, 2010, he should nevertheless receive the benefit of the Supreme Court's recent

5

ruling in *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321(2012) because the rationale underlying that decision applies to his case. Under the FSA, appellant would no longer be subject to a mandatory minimum sentence of 120 months on his crack conviction because his case involved 20 grams of crack. Instead, appellant would be facing a Guidelines range of 63-78  months (total offense level 19 and criminal history category VI)meaning that he would be facing 63  months at the low end. . Thus, under the FSA, appellant would be eligible for a substantial sentence reduction which would be consistent with the FSA's stated purpose to "restore fairness to Federal cocaine sentencing." *See* Pub.L. No. 111-220, 124 Stat. 2372 (Preamble).

In *Dorsey v. United States, supra*, the Supreme Court held that the more lenient penalties of the FSA applied immediately to defendants sentenced on or after August 3, 2010, the FSA's effective date, including those defendants who had committed their offenses prior to August 3, 2010, "and were sentenced after August 3 but before November 1, 2010—a period *after* the new Act's effective date but before the new Guidelines first took effect." D*orsey*, 132 S.Ct. at 2326, 2335 (emphasis original). Although defendants, like appellant, seeking application of the FSA in §3582(c)(2) proceedings were not before the Supreme Court in *Dorsey*, it follows directly from the reasoning in *Dorsey* that the FSA penalty scheme also applies to all defendants who are in the same procedural posture as appellant regardless of when their initial

6

sentencing occurred.

## 2. The Ruling in *Dorsey*

In *Dorsey v. United States*, 132 S.Ct. at 2326, 2335, the Supreme Court held that the 18-to-1 mandatory minimums enacted by the FSA apply to defendants who were sentenced after the FSA's enactment, regardless of when they committed the offense. Analyzing the FSA's "language, structure, and basic objectives," the Court determined that Congress clearly indicated that the FSA's more lenient penalties were to apply immediately. *Id*. at 2326. The Court rested its conclusion "primarily upon the fact that a contrary determination would (in respect to relevant groups of drug offenders) produce sentences less uniform and more disproportionate than if Congress had not enacted the Fair Sentencing Act at all." *Id*.

The Court set forth "six considerations" in *Dorsey* that, "taken together, convince[d it] that Congress intended the Fair Sentencing Act's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who were sentenced after that date." *Dorsey*, 132 S.Ct. at 2331. First, the Supreme Court held that the 1871 federal savings statute, 1 U.S.C. §109, does not require an "express statement" for a criminal statute amending a penalty scheme to apply retroactively, so long as the "plain import" or "fair implication" of the statute so provides. *Id*. at 2332. The Court acknowledged that the 1871 statute purported to require that

7

subsequent Congresses expressly state whether ameliorative criminal statutes would apply to offenses that occurred prior to the enactment of the statute, but noted that "statutes enacted by one Congress cannot bind a later Congress." *Id*. at 2331. Thus, the Court held that the 1871 statute is not a bar to applicability, so long as courts "assure themselves that ordinary interpretive considerations point clearly in that direction." *Id*. at 2332.

Second, the Court observed that the Sentencing Reform Act (SRA) sets forth a different background sentencing principle that defendants generally do get the benefit of ameliorative sentencing amendments. *Dorsey*, 132 S.Ct. at 2331. It noted that, pursuant to 18 U.S.C. § 3553(a)(4)(A)(ii), courts apply the guidelines that are in effect on the date of the initial sentencing. *Id*. Thus, "when the Commission adopts new, lower Guideline amendments, those amendments become effective to offenders who committed an offense prior to the adoption of the new amendments but are sentenced thereafter." *Id*. The Court held that Congress in passing the FSA was no doubt aware of the SRA. *Id*. Therefore, it is against the background of the SRA that the Court interpreted the FSA. *Id*.

Third, the Court explained that the language in the FSA implies that Congress intended to follow the SRA's background principle allowing for defendants to benefit from ameliorative sentencing amendments. *Dorsey*, 132 S.Ct. at 2332. It noted that

Congress required the Commission to promulgate "as soon as practicable" (and not later than 90 days after August 3, 2010) "conforming amendments" to the Guidelines that "achieve consistency with other guideline provisions and applicable law." *Id*. at 2332 (quoting FSA §8, 124 Stat. 2374). Accordingly, the Commission reduced the base offense levels for all crack amounts proportionally, using the new 18-to-1 ratio, including the offense levels governing amounts of crack under 28 grams. *Id*. at 2333 (citing Fed. Reg. 66191). And, in accordance with the SRA's background principle, those conforming amendments applied immediately upon promulgation--including those defendants offenders whose offenses occurred prior to August 3, 2010. *Id*. (citing USSG §1B1.11(a)).

Fourth, the Court observed that applying the pre-FSA mandatory minimums to post-FSA sentencings would create "disparities of a kind that Congress enacted the Sentencing Reform Act and the Fair Sentencing Act to prevent." *Dorsey*, 132 S.Ct. at 2333. Two individuals who were sentenced at the same time, at the same place, and even by the same judge would receive radically different sentences--based only on the date of their conduct. *Id*. In addition, applying pre-FSA mandatory minimums at post-FSA sentencings would require courts to impose pre-Act sentences after "Congress had specifically found such a sentence was unfairly long." *Id*.

Fifth, the Court decried the fact that not applying the FSA, rather than restoring

fairness to federal cocaine sentencing, would make sentences even more disproportionate. *Dorsey*, 132 S.Ct. at 2334. "It would create new anomalies--new sets of disproportionate sentences--not previously present." *Id*. This is because sentencing courts would be required to apply the 18-to-1 sentencing guidelines in conjunction with the 100-to-1 mandatory minimums--resulting in the 100-to-1 mandatory minimums trumping the 18-to-1 guidelines for some but not all defendants. This would result in a sentencing "cliff" wherever a defendant was subject to a 100-to-1 mandatory minimum. *Id*. It would also result in sentencing valleys where defendants with substantially different conduct would be subject to the same sentence. *Id*. at 2337-38, Appendix B to *Dorsey* opinion.

Sixth, and finally, the Court explained that there were no strong countervailing considerations. *Id*. at 18-19. *Dorsey*, 132 S.Ct. at 2335. Taking these six considerations together, the Court concluded that Congress intended the FSA's more lenient mandatory minimums to apply to post-Act sentencing of pre-Act offenders. *Id*.

### 3.    It Follows from *Dorsey* that the FSA Mandatory Minimums Apply to §3582(c)(2) Proceedings.

It follows from *Dorsey* that the FSA's more lenient mandatory minimums also apply to §3582(c)(2) proceedings applying the retroactive FSA guideline

amendments. All six considerations set forth by the Court in *Dorsey* apply equally here, leading to the same result.

First, *Dorsey* makes clear there is no "express statement" requirement for the FSA's mandatory minimums to apply retroactively. Therefore, as in *Dorsey*, this Court must look for the "plain import" or "fair implication" of the FSA. *Dorsey*, *Dorsey*, 132 S.Ct. at 2332.

Second, there is a background principle favoring retroactive application of the FSA in the present context that is even stronger than in the ordinary sentencing context that *Dorsey* considered. In addition to the principle that defendants who are yet to be sentenced benefit from ameliorative amendments (*Dorsey*, 132 S.Ct. at 2332 citing 18 U.S.C. §3553(a)(4)(A)(ii)), the Sentencing Reform Act (SRA) also expressly recognized that there would be occasions when an ameliorative sentencing amendment should apply not only to defendants who had not yet been sentenced, but also to defendants who had already been sentenced to terms of imprisonment. *See* 18 U.S.C. §3582(c)(2). The SRA expressly delegates to the Commission, subject to Congressional veto, the power to determine whether ameliorative guideline amendments are retroactive such that prisoners already serving terms of imprisonment would be eligible for a sentence reduction. *See* 28 U.S.C. §994(u); *Mistretta v. United States*, 488 U.S. 361, 394 (1989).

Third, as in *Dorsey*, 132 S.Ct. at 2332, the language of the FSA implies that Congress intended to follow the SRA background principles here, including both (1) the delegation to the Commission of the retroactivity determination, and (2) the consistency between the statute and the guidelines--wherever they apply. With regard to the former, an earlier version of the bill contained an express provision that the FSA not be applied retroactively. *See* H.R. 265, 11th Cong. §11 (as introduced Jan. 7, 2009) ("The amendments made by this Act shall apply to any offense committed on or after 180 days after the date of enactment of this Act. There shall be no retroactive application of any portion of this Act."). But the version that was enacted into law contained no such provision. As a result, as in *Dorsey*, 132 S.Ct. at 2333 citing the Commission's practice requiring application of new guideline amendments to offenders who committed their offense prior to the new amendments' effective date but who were sentenced thereafter), the background principles here allow the Commission to determine whether the FSA guideline amendments would be retroactively available. *See* 28 U.S.C. 994(u). Here, there is more to show Congress's intent that this decision be made by the Commission. After the Commission determined that the amendments would be retroactively available, *see* 76 Fed. Reg. 41332-01, Congress could have acted to reject this determination at any time. *Mistretta*, 488 U.S. at 394. By taking no action to reject or modify the Commission's

12

retroactivity amendment, Congress allowed the FSA guideline amendment to become retroactive. Thus, not only did Congress intend for the SRA background principle to apply, but it allowed it to operate.

With regard to the latter, Congress directed the Commission to make "conforming amendments" to the guidelines that "achieve consistency with other guideline provisions and applicable law." FSA §8, 124 Stat. 2374. As the Court held in *Dorsey*, "[r]ead most naturally, 'applicable law' refers to the law as changed by the Fair Sentencing Act, including the provisions reducing the crack mandatory minimums." *Dorsey*, 132 S.Ct. at 2332-33 citing FSA §2(a), 124 Stat. 2372. Although Congress left the retroactivity decision to the Commission, it made clear its desire for consistency between the guidelines and the statute in the FSA. *Id*. Because the Commission determined that the guideline amendments mandated by the FSA would be retroactively available, the FSA is itself retroactively applicable.

Fourth, as in *Dorsey*, 132 S.Ct. at 2333, continuing to apply the pre-FSA 100-to-1 mandatory minimums to § 3582(c)(2) proceedings seeking application of the retroactive FSA 18-to-1 guideline amendments would create the very sort of disparity Congress enacted the SRA and the FSA to prevent. Two individuals with identical criminal histories, who engaged in the same criminal conduct involving the same amount of crack, and who sought §3582(c)(2) reductions at the same time from the

13

same judge, would receive radically different sentences--based solely on when their initial sentencings had occurred. For example, if appellant had been sentenced initially on August 4, 2010, he would not have been subject to a mandatory minimum sentence of 120 months (based on 20 grams of crack). Rather, his Guidelines range would be 63-78 months (total offense level 10; criminal history category VI) and he would not be subject to a mandatory minimum. (R. 88, MOR, p. 2). Holding that appellant is ineligible for any reduction because his initial sentencing occurred on February 25, 2008, would create the kind of disparity that Congress enacted the FSA to prevent. *Dorsey*, 132 S.Ct. at 2333 (citing 28 U.S.C. §991(b)(1)(B); S.Rep. No. 98-223, p. 74 (1983)). Further, it would require the court to maintain an unfairly long sentence after Congress had specifically rejected it as unfair, and after the Commission had acted to remedy this unfairness. *Id*. 132 S.Ct. at 2333.

Fifth, not to apply the FSA mandatory minimums in §3582(c)(2) proceedings governed by the retroactive FSA sentencing guidelines would exacerbate disproportionate sentencing. *Dorsey*, 132 S.Ct. at 2334-35 and Appendix B. All the examples of disproportionality set forth in *Dorsey's* Appendix B, would occur in §3582(c)(2) proceedings as well. A defendant in criminal history category I, who had previously been sentenced to 51 months based on 4 grams of crack cocaine (offense level 22) would be eligible for a 30-month sentence reduction - to a 21 month

14

sentence (within 21 to 27-month range), but the same defendant who had previously been sentenced to 63 months based on 5 grams of crack cocaine would be eligible for only a 3-month reduction to 60 months (despite same 21 to 27-month range). On the other hand, a defendant with 50 grams would be required to serve 120 months (despite a 63 to 78-month range), whereas a defendant with 500 grams would be eligible for a sentence just one month longer, a 121-month sentence (within the 121-151 month range). Thus, as in *Dorsey*, application of the 100-to-1 mandatory minimums to defendants eligible for the 18-to-1 guidelines "would produce a crazy quilt of sentences, at odds with Congress' basic efforts to achieve more uniform, more proportionate sentences." *Dorsey*, 132 S.Ct. at 2334-35. "Congress, when enacting the Fair Sentencing Act, could not have intended any such result." *Id*. at 2335.

Finally, the Supreme Court in *Dorsey*, 132 S.Ct. at 2335, found no strong countervailing consideration. Nor is there any such consideration here. The Court in *Dorsey* acknowledged that its holding that the FSA minimums applied to pre-Act offenders sentenced after August 3, 2010, would create disparities between those who were sentenced before August 3, 2010, and those who were sentenced after that date. *Id*. at 2335. There is no doubt that, in the context of initial sentencings, this is true: defendants who were sentenced on August 2, 2010, faced starkly different sentencing exposure than those facing sentencing on or after August 3, 2010. But no such

disparities exist in the context of §3582(c)(2) proceedings. Here, all defendants would be equally eligible for sentencing within the FSA sentencing framework. Rather, it is the continued application of the pre-FSA mandatory minimums that would create disparity.

4.    **Principles of statutory construction support a reading of the Fair Sentencing Act (FSA) to apply retroactively in 18 U.S.C. §3582(c)(2) proceedings.**

Several principles of statutory construction also support reading the FSA mandatory minimums to apply in 18 U.S.C. §3582(c)(2) proceedings. One of them is the principle that remedial legislation should be construed liberally. *See e.g., Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1176 (9th Cir. 2010); *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996). While the FSA deals with penal provisions which are not traditionally viewed as remedial legislation, the Act was unquestionably intended to remedy what has come to be viewed as unfair and unduly harsh sentencing.

Another general principle of statutory construction to consider is that "[c]ourts are bound to construe a statute to avoid absurd results ..." *Bailey v. City of Lawrence*, 972 F.2d 1447, 1452 (7th Cir. 1992). *See also Sosa v. Jones*, 389 F.3d 644, 648 (6th Cir. 2004) (recognizing that it is "a traditional and appropriate function of the courts" to "construe statutes so as to avoid absurd results") quoting *Sorrells v. United States*,

16

287 U.S. 435, 450 (1932). Applying the FSA Guidelines – in §3582(c)(2) proceedings – without applying the FSA mandatory minimums on which they are based and with which they were to be consistent would lead to absurd results in at least two ways. Initially, it would lead to what was described in *United States v.Dixon*, 648 F.3d 195, 201 (3rd Cir. 2011) as "an incongruous result that puts district courts in the odd position of having to apply Guidelines implemented to 'achieve consistency with applicable law' to cases in which the 'applicable law' was not applicable."

Second, there is the "[o]dd[ ]" result that "the only ones who benefit from [the guideline amendments] are the worst offenders." *United States v. Fisher*, 646 F.3d 429, 432 (7th Cir. 2011) (Williams, J., dissenting from denial of rehearing en banc).[1] *See also Dorsey*, 132 S.Ct. at 2337 (noting that such "cliffs" "would create similar Guidelines sentences for offenders who dealt in radically different amounts of crack"). While Judge Williams was addressing the failure to apply the new mandatory minimums in original sentencing proceedings, there is the same perverse result if courts cannot apply the new mandatory minimums in §3582(c)(2) proceedings based on the new guidelines. Defendants will fully benefit from the new guidelines only if they trafficked in a large enough quantity of crack for the new sentencing range to

---

[1] In the Seventh Circuit, *Dorsey* was consolidated with the *Fisher* case for purposes of this opinion. *See Fisher*, 646 F.3d at 430.

remain above the old mandatory minimum, such that the 18-to-1 ratio controls. For defendants whose offenses involved small enough quantities of crack to place the new guideline range below the mandatory minimum, the 18-to-1 ratio will not control. The result is that lower-level crack defendants will be denied the full benefit of the FSA, while higher-level crack defendants will receive the full benefit, which is an absurd result that is patently inconsistent with the purpose of the Act.

There is also a principle of statutory construction triggered by the fact that Congress had before it H.R. 265, 11th Cong. §11 (*see* p. 12 of this brief) with the clause expressly providing that "[t]here shall be no retroactive application of any portion of this Act." In the bill it actually passed, Congress did not include that provision. This triggers the principle of statutory construction that "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1096 (9th Cir. 2010) (quoting *Russello v. United States*, 464 U.S. 16, 23-24 (1983)). *See also John Hancock Mut. Life Ins. Co. v. Harris Trust and Savings Bank*, 510 U.S. 86, 100-01 (1993) (quoting *Russello*, applying it to rejection of Senate draft of bill, and stating that "[w]e are directed by those words [in the final bill], and not by the discarded draft"); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) (noting enactment of House bill

18

rather than Senate bill and stating that "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language"). The deletion of limiting language is exactly what happened here; the earlier version of the bill expressly and broadly barred any retroactive application and the final version of the bill contained no limitation at all.

Finally, there are two fairness principles of statutory construction to consider – one not so clearly established which is specific to the general saving statute (1 U.S.C. §109) and one which is very clearly established and more general. The first is the suggestion of some of the Supreme Court general saving statute cases that "some sense of the 'fair' result . . . sometimes plays a role" in deciding whether to apply the statute. *See United States v. Douglas*, 644 F.3d 39, 44 (1st Cir. 2011) (citing *United States v. Chambers*, 291 U.S. 217 (1934) and *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964)). In *Chambers*, 291 U.S. at 221, the Court dealt with prosecutions under the National Prohibition Act, which Congress had recognized, similar to the recognition about the earlier crack law, was a failed policy. In *Hamm*, 379 U.S. at 307, the Court dealt with prosecutions of protestors against racial discrimination that the new law was intended to eliminate which is somewhat similar to the disparate racial impact that the new crack law here is intended to ameliorate, *see Dorsey*, 132

19

S. Ct. at 2328 (noting public understanding of sentences embodying 100-to-1 ratio as reflecting unjustified race-based differences and citing multiple Sentencing Commission reports).

The second fairness principle of statutory construction to consider is the rule of lenity, which "embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348 (1971) (other citation and internal quotation marks omitted). The application of that rule to the question of whether the FSA applies immediately to all sentences was also discussed in the *United States v. Douglas, supra*:

> Finally, while the rule of lenity does not apply where the statute is "clear," (citation omitted), [the general saving statute] is less than clear in many of its interactions with other statutes, and that is arguably true in the present case as well. Our principal concern here is with the "fair" or "necessary" implication, [*Warden, Lewisburg Penitentiary v.] Marrero*, 417 U.S. [653,] 659 n.10 [(1974)]; *Great N. Ry. Co. [v. United States]*, 208 U.S. [452,] 465 [(1908)], derived from the mismatch between the old mandatory minimums and the new guidelines and to be drawn from the congressional purpose to ameliorate the cocaine base sentences. But the rule of lenity, applicable to penalties as well as the definition of crimes, adds a measure of further support to Douglas.

*Douglas*, 644 F.3d at 44. While the issue before the court in *Douglas* was retroactive application of the FSA mandatory minimums in original sentencing proceedings, the reasoning applies equally to their application in §3582(c)(2) sentence modification proceedings.

20

If the FSA were applied to appellant, he would not be subject to a mandatory minimum sentence because he was accountable for 20 grams of crack. (R. 88, MOR, p. 2). *See* 21 U.S.C. §841(b)(1)(B)(iii). The Guidelines range would be 63-78 months based on a total offense level of 19 and a criminal history category of VI.    (R. 88, MOR, p. 2). Applying the FSA to appellant would have a considerable impact on his sentence. As shown above, *Dorsey* does not preclude a sentence reduction for appellant.

## Conclusion

For the foregoing reasons, the appellant, Cornelius Blewitt, by counsel, respectfully submits that the final order denying a sentence reduction must be vacated and the case remanded for resentencing.

<div style="margin-left:50%">

s/ Jamie L. Haworth
s/ Frank W. Heft, Jr.
Office of the Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202
(502)584-0525
Jamie_Haworth@fd.org
Frank_Heft@fd.org


Counsel for Appellant

</div>

**Certificate of Service**

I hereby certify that on August 14, 2012, I electronically filed the foregoing brief with the clerk of the court by using the ECF system. I also certify that on Augsut 14, 2012, the foregoing brief was served on the following counsel of record at her email address through ECF: Candace G. Hill, Assistant United States Attorney at Candy.Hill@usdoj.gov.

s/ Jamie L. Haworth

**Appellant Blewitt's Addendum and Designation of District Court Documents**

**Record No. - Description of Document**

| | |
|---|---|
| 8 | Indictment |
| 20 | Information and Notice |
| 26 | Plea Agreement |
| 27 | Order on Guilty Plea |
| 38 | Presentence Investigation Report (PSR) (sealed) |
| 39 | Judgment and Commitment Order |
| 103 | Transcript of Change of Plea Proceedings on 1-21-05 |
| 104 | Transcript of Sentencing Proceedings on 4-15-05 |
| 88 | Memorandum of Recalculation (MOR)(sealed) |
| 90 | Order re filing of MOR |
| 93 | Defendant's Response to MOR(sealed) |
| 97 | Order Denying Sentence Reduction |
| 100 | Notice of Appeal |