CASE NO. 12-5226

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,                    PLAINTIFF-APPELLEE,

vs.

CORNELIUS DEMORRIS BLEWETT,          DEFENDANT-APPELLANT.

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
_____

SUPPLEMENTAL BRIEF FOR APPELLANT

s/ Frank W. Heft, Jr.
s/ Jamie L. Haworth
Office of the Federal Defender
200 Theatre Building
629 South Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Frank_Heft@fd.org
Jamie_Haworth@fd.org

Counsel for Appellant.

**Corporate Affiliate - Financial Interest Disclosure Statement**

Appellant is an individual criminal defendant and, as such, is exempt from the requirements of 6 Cir. R.26.1.

# TABLE OF CONTENTS

Corporate Affiliate/Financial Interest Disclosure Statement. . . . . . . . . . . . . . . . . .  i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Cases, Statutes, and Other Authorities . . . . . . . . . . . . . . . . . . . . . . . .  iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

Statement of Subject Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      The Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124
        Stat. 2372, can be retroactively applied to persons sentenced before the
        statute's effective date.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. If the saving statute (1 U.S.C. §109) does not apply to proceedings
        under 18 U.S.C. §3582(c)(2), then the FSA applies to appellant who was
        sentenced before the FSA was enacted. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                a.  There is no general of specific saving statute in this case.. . . . . . 12

b.  Since there is no saving statute, the FSA applies to appellant's 18 U.S.C. §3582(c)(2) proceeding... . . . . . . . . . . . . . . . . . . . . . . . 15

2. Even if the saving statute (1 U.S.C. §109) applies to proceedings under 18 U.S.C. §3582(c)(2), the fair implication of the FSA is that its more lenient penalties apply in appellant's case. . . . . . . . . . . . . . . . . 17

II.    *Dorsey v. United States,* 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) does not prevent the retroactive application of the FSA. . . . . . 23

A.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.  Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. The Ruling in *Dorsey*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

3. It follows from *Dorsey* that the FSA's mandatory minimum penalty provisions apply to §3582(c)(2) proceedings.. . . . . . . . . . . . . . . . . . . . . 29

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Appellant's Addendum and Designation of District Court Documents. . . . . . . . . 40

## Table of Cases, Statutes, and other Authorities

## Cases

*Bell v. Maryland,* 378 U.S. 226 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bradley v. School of Board of Richmond,* 416 U.S. 696 (1974). . . . . . . . . . . . . . . 15

*Bradley v. United States,* 410 U.S. 605 (1973). . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Dillon v. United States,* 560 U.S. __, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 36

*Dorsey v. United States,* 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gozlon-Peretz v. United States,* 498 U.S. 395 (1991). . . . . . . . . . . . . . . . . . . . . 11

*Great N. Ry. Co. v. United States,* 208 U.S. 452 (1908). . . . . . . . . . . . . . . . . . . 19

*Hamm v. City of Rock Hill,* 379 U.S. 306 (1964). . . . . . . . . . . . . . . . . . . 18, 19, 20

*Hertz v. Woodman,* 218 U.S. 205 (1910). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Holcomb v. United States,* 132 S.Ct. 62-63 (2012). . . . . . . . . . . . . . . . . . . . . . . 21

*INS v. Cardoza-Fonseca,* 480 U.S. 421 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*INS v. St. Cyr,* 533 U.S. 289 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*John Hancock Mut. Life Ins. Co. v. Harris Trust and Savings Bank,* 510 U.S. 86 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Johnson v. United States,* 529 U.S. 694 (2000). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Landgraf v. USI Film Products,* 511 U.S. 244 (1994). . . . . . . . . . . . . 16, 17, 18, 19

*Mistretta v. United States,* 488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Plata v. Schwarzenegger,* 603 F.3d 1088 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . 14

*Russello v. United States,* 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*RYO Machine, LLC v. United States Department of Treasury,*
696 F.3d 467 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Bowers,* 615 F.3d 715 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Carradine,* 621 F.3d 575 (6th Cir. 2010) . . . . . . . . . . . . . . . . 7, 10

*United States v. Curry,* 606 F.3d 323 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Dixon,* 648 F.3d 195 (3rd Cir. 2011) . . . . . . . . . . . . . . . 15, 19, 20

*United States v. Douglas,* 644 F.3d 39 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . 19, 32

*United States v. Holcomb,* 657 F.3d 445 (7th Cir. 2011) . . . . . . . . . . 21, 22, 23, 30

*United States v. Holcomb,* 475 Fed.Appx. 90 (7th Cir. 2012) . . . . . . . . . . . . . 21, 22

*United States v. Howard,* 644 F.3d 455 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Johnson,* 569 F.3d 619 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Payton,* 617 F.3d 911 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Rutherford,* 442 U.S. 544 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653 (1974) . . . . . . . . . . . 18

## Statutes

1 U.S.C. §109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §582(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. §3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3553(a)(4)(A)(ii).. . . . . . . . . . . . . . . . . . . 11, 26, 30, 31

18 U.S.C. §3582(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. §3582(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. §841. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21 U.S.C. §841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

21 U.S.C. §841(b)(1)(B)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(b)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 37

21 U.S.C. §846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §851. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6

## Other Authorities

6 Cir.R. 28(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

76 Fed. Reg. 41332-01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Comprehensive Drug Abuse Prevention and Control Act of 1970. . . . . . . . . . . . 13

Fair Sentencing Act (FSA) of 2010.. . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed.R.Crim.P. 11(c)(1)(B)................................................. 3

Fed. Reg. 66191........................................................ 27

FSA §8, 124 Stat. 2374............................................. 27, 32

H.R. 265, 111th Cong. §11.......................................... 14, 31

Pub.L. No.111-220, 124 Stat. 2372............................... *passim*

Sentencing Reform Act (98 Stat. 1987)........................... *passim*

U.S.S.G. App. C, Amendment 748.................................... 4

U.S.S.G., App. C, Amendment 750................................... 5

U.S.S.G. App. C., Amendment 759................................... 5

U.S.S.G. §1B1.11(a)................................................. 27

U.S.S.G. §2D1.1..................................................... 4

U.S.S.G. §2D1.1(c)(10)(2011)....................................... 34

U.S.S.G. §5G1.1(b)............................................... 4, 6

## Statement Regarding Oral Argument

Appellant believes that the issues are adequately set forth in his brief and that oral argument will not be of material assistance to the Court. Appellant therefore waives oral argument.

## Introduction

This supplemental brief is filed in conformance with the Court's order of January 2, 2013, to address the two issues set forth below.

## Statement of Subject Matter and Appellate Jurisdiction

This is an appeal from a final order entered on February 21, 2012, that denied appellant, Cornelius Blewett, a crack sentence reduction. (Record (hereafter R.) No. 97, Order, Page ID # 392-393). The district court had original jurisdiction pursuant to 18 U.S.C. §3231 and §3582(c)(2). This Court has jurisdiction of this appeal pursuant to 18 U.S.C. §3742. *See United States v. Bowers*, 615 F.3d 715, 722 (6th Cir. 2010) and *United States v. Howard*, 644 F.3d 455, 458 (6th Cir. 2011). Notice of Appeal (R. 100, Page ID # 399-400) was filed on February 29, 2012.

## Statement of the Issues

I. The Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372, can be retroactively applied to persons sentenced before the statute's effective date.

II. *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) does not prevent the retroactive application of the FSA.

## Statement of the Case

On January 21, 2005, appellant, Cornelius Blewett, pleaded guilty to crack and powder cocaine offenses. (R. 27, Order re Guilty Plea, Page ID # 77-80).

1

In conformance with a plea agreement, he was sentenced to a total of 120 months imprisonment. (R. 26, Plea Agreement, ¶10, Page ID # 70-71; R. 104, Transcript (TR) of Sentencing, p. 11, Page ID # 437; R. 39, Judgment, p. 3, Page ID # 149).

This is an this appeal from the district court's order of February 21, 2012, that denied appellant a crack sentence reduction pursuant 18 U.S.C. §3582(c)(2). (R. 97, Order, Page ID # 392-393).

## Statement of Facts

On October 20, 2004, an indictment was returned and charged appellant, Cornelius Blewett, and co-defendant Jarreous Blewitt, with conspiracy to possess with intent to distribute and to distribute powder and crack cocaine in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(B)(iii), and §846 (Count 1); two counts of aiding and abetting possession with intent to distribute and distributing 5 grams or more of crack cocaine in violation of 18 U.S.C. §2, 21 U.S.C. §841(a)(1), and §841(b)(1)(B)(iii) (Counts 2 and 3); and one count of aiding and abetting possession with intent to distribute and distributing powder cocaine in violation of 18 U.S.C. §2, 21 U.S.C. §841(a)(1), and §841(b)(1)(C) (Count 4). (R. 8, Indictment, Page ID # 23-27). Pursuant to 21 U.S.C. §851, the government filed notice of prior convictions which doubled the mandatory minimum sentence from 5 years to 10 years. (R. 20, Notice, Page ID # 60-61).

The parties entered into a plea agreement pursuant to Fed.R.Crim.P. 11(c)(1)(B). Under the terms of the plea agreement, the Government would "recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range, but not less than any mandatory minimum term of imprisonment (10 years) required by law." (R. 26, Plea Agreement, ¶10, Page ID # 70; R. 103, TR Guilty Plea, pp. 11-12, Page ID # 457-458). Appellant pleaded guilty to the four counts of the indictment on January 21, 2005. (R. 27, Order re Guilty Plea, Page ID # 77-80). To establish a factual basis for the guilty plea, the government advised the court that appellant provided a confidential informant (CI) with crack cocaine on two occasions; assisted another person in obtaining powder cocaine to sell; and engaged in a conspiracy to distribute crack. (R. 103, TR Guilty Plea, pp. 17-18, Page ID # 463-464). Appellant agreed with the summary of the facts. *Id*. at pp. 18-21, Page ID # 464-467; R. 26, Plea Agreement, ¶3, Page ID # 67-68.

The Presentence Investigation Report (PSR) reflects that the November 1, 2004, Guidelines Manual was used in this case. (R. 38, PSR ¶34, Page ID # 314).[1] The total offense level was 23 (base offense level 26 minus 3 levels for acceptance of responsibility) and appellant had a criminal history category of VI which produced

---

[1] The PSR is included in the Memorandum of Recalculation (MOR). *See* R. 88, Page ID # 290-293.

3

a Guidelines range of 92 to 115 months. *Id*. at ¶¶37-47, 57, 73, Page ID # 314-315, 321, 323. However, due to the 21 U.S.C. §851 notice, the crack charges (Counts 1, 2, and 3) carried a mandatory minimum sentence of 120 months pursuant to Sentencing Guideline (U.S.S.G.) §5G1.1(b). *Id*. at ¶ 73, Page ID # 315.

On April 15, 2005, appellant was sentenced to a total of 120 months imprisonment and an 8-year term of supervised release. (R. 104, TR Sentencing, pp. 11-12, Page ID # 437-438; R. 39, Judgment, pp. 3-4, Page ID # 149-150).

On February 20, 2009, the district court in response to the 2007 Guidelines amendments entered an order denying appellant a crack sentence reduction because he was originally sentenced to the mandatory minimum term (120 months) on the crack offenses. (R. 79, Order, Page ID # 269).

On August 3, 2010, the Fair Sentencing Act (FSA) (Pub.L. No. 111–220, 124 Stat. 2372 (2010)) became effective and increased the amount of crack necessary to trigger the 10-year mandatory minimum from 50 grams to 280 grams. The amount of crack necessary to trigger the 5-year  mandatory minimum was increased from 5 grams to 28 grams. In response to the FSA, the Sentencing Commission amended U.S.S.G. §2D1.1 - initially on an emergency basis and then permanently - to conform the offense levels for crack offenses to the new ratios between crack and powder cocaine that Congress adopted in FSA. *See* U.S.S.G. Appendix C, Amendments 748

4

and 750. The Sentencing Commission designated the permanent amendment to be retroactive. *See* U.S.S.G. Appendix C, Amendment 759.

In response to the FSA, the district court on January 5, 2012, appointed counsel to represent appellant for purposes of a 18 U.S.C. §3582(c)(2) proceeding and ordered that counsel be provided with a copy of a Memorandum of Recalculation (MOR) prepared by the Probation Office. (R. 90, Order, Page ID # 371-372). Counsel was also to be provided with a copy of the PSR and the Judgment. *Id*.

The MOR, which was filed on January 4, 2012, based its amended Guidelines calculations on 20 grams of crack. (R. 88, MOR, p. 2, Page ID # 291). Consequently, the base offense level was reduced from 28 to 22 and the total offense level dropped from 25 to 19. *Id*. at pp. 2-3, Page ID # 291-292. As a result, the original Guidelines range of 120 to 137 months was lowered to 63 to 78 months absent the mandatory minimum sentence of 120 months. *Id*. at p. 3, Page ID # 292. The district court found that "given the mandatory minimum sentences required (120 months), [appellant] would not be subject to a reduction."

The MOR noted that if the FSA's lower thresholds for mandatory minimum terms of imprisonment applied retroactively to the case at bar,

> then there would not be a statutory mandatory minimum term of imprisonment. Instead, the term would be not more that 20 years imprisonment for each count. And, after enhancement by the 21 U.S.C.

5

§851 Notice, the penalty would become not more than 30 (sic) imprisonment ... plus not less than 6 years supervised release.

(R. 88, MOR, p. 3, Page ID # 292).

Defense counsel filed an objection to the MOR. She agreed with the district court's conclusion that the amendments to the Guidelines applied to appellant's case but she specifically objected to the court's ruling that the new mandatory minimum sentences of the FSA did not apply to him. (R. 93, Objection to MOR (sealed), Page ID # unavailable).[2] Counsel urged the court to apply the amended Guidelines calculation in this case and "eliminate the mandatory minimum sentence as well." *Id*.

On February 21, 2012, the district court overruled the objections to the MOR and entered an order denying appellant a crack sentence reduction. (R. 97, Order, Page ID # 392-393). The court ruled that 18 U.S.C. §3582(c)(2) did not allow a sentence reduction "simply because there is a change in the statutorily required mandatory minimum sentence." *Id*. It was further noted that pursuant to U.S.S.G. §5G1.1(b) "after calculation of the new range as a result of the amendments, the bottom of the range is the mandatory minimum sentence in place at the time of

---

[2] The district court does not allow the parties access to sealed documents in its electronic record. (Joint General Order 11-01 In Re: Sealed Documents: Amendment to Joint General Order 06-01). The ban applies to sealed documents the parties are otherwise allowed to have, e.g., Presentence Reports. *Id*. Thus, with respect to defense counsel's objection to the MOR, appellant cannot comply with 6 Cir. R. 28(a)(1) because he does not have the Page ID # to cite.

6

sentencing." *Id*. at Page ID # 393. Citing *United States v. Carradine*, 621 F.3d 575

(6th Cir. 2010), the court concluded:

> The 'general savings statute,'1 U.S.C. §109, requires us to apply the
> penalties in place at the time the crime was committed, unless the new
> enactment expressly provides for its own retroactive application.
> (citations omitted). The new law at issue here, the Fair Sentencing Act
> of 2010, contains no express statement that it is retroactive nor can we
> infer any such express intent from its plain language. Consequently, we
> must apply the penalty provision in place at the time Carradine
> committed the crime in question.

*Id*. Notice of Appeal (R. 100, Page ID # 399-400) was filed on February 29, 2012.

## Summary of Argument

Issue I - The Fair Sentencing Act of 2010 (FSA) can be retroactively applied

to persons sentenced before the statute's effective date. The saving statute (1 U.S.C.

§109) does not apply to a sentence modification proceeding under 18 U.S.C.

§3582(c)(2). The language of the saving statute arguably applies to a pending

prosecution and is inapplicable to a §3582(c)(2) proceeding which has a limited scope

and purpose. The FSA does not contain specific saving clause. An earlier version of

the bill provided that it would not have retroactive effect but the version of the bill

that was enacted did not make any reference to retroactivity. Thus, there is neither a

specific nor a general saving statute that would prevent retroactive application of the

FSA to a defendant who was sentenced before the statute's enactment.

The general rule of decision requires a court to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary. The FSA was in effect when the district court denied appellant a crack sentence reduction. Applying the FSA's more lenient penalties would not result in a manifest injustice because it would effectuate Congress's intent to "restore fairness to Federal cocaine sentencing."

Alternatively, if the saving statute applies, then the "fair implication" of the FSA - that was recognized in *Dorsey* - is that its more lenient penalties apply in a §3582(c)(2) proceeding.

Issue II - *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) does not prevent the retroactive application of the FSA. The rationale underlying *Dorsey* applies to a case in which the defendant seeks a sentence modification pursuant to 18 U.S.C. §3582(c)(2). To hold otherwise would produce sentences more disproportionate than if Congress had not enacted the FSA at all.

In *Dorsey*, the Court set forth six considerations that convinced it that Congress intended the FSA's more lenient penalties to apply to offenders whose crimes preceded the date the statute went into effect - August 3, 2010, - but who were sentenced after that date. Those six considerations as well as rules of statutory construction support the conclusion that the *Dorsey* applies to cases in which the

8

defendant seeks a sentence modification under 18 U.S.C. §3582(c)(2).

Congress's goals of consistency, avoiding disparity, and eliminating unfairness, as embodied in the FSA, establish a "fair implication" that Congress intended the FSA mandatory minimums to apply wherever the FSA guidelines do including §3582(c)(2) proceedings based on the FSA Guidelines amendments.

## Argument

### I.   The Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372, can be retroactively applied to persons sentenced before the statute's effective date.

**A. Standard of Review**

"Generally, this Court reviews the denial of a motion to modify a sentence under 18 U.S.C. §3582(c)(2) under the abuse-of-discretion standard." *United States v. Payton*, 617 F.3d 911, 912 (6th Cir. 2010) (other citations omitted). If, however, the district court "rules that it has no authority to reduce the defendant's sentence under the statute, the district court's conclusion that the defendant is ineligible for a sentence reduction is a question of law that is reviewed *de novo*." *United States v. Johnson*, 569 F.3d 619, 623 (6th Cir. 2009) (other citations omitted). *See also United States v. Payton*, 617 F.3d at 913 and *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).

**B. Discussion**

As the Statement of Facts shows, appellant pleaded guilty and was sentenced before the FSA went into effect on August 3, 2010. In *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010), the defendant was sentenced before the effective date of the FSA and his appeal was pending after the statute's enactment. This Court held that the "general savings statute" (1 U.S.C. §109) required it "to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application." *Id*. (Other citations omitted). The Court determined that the FSA did not contain an "express statement that it is retroactive" and it could not infer "any such express intent from its plain language." *Id*. Thus, the Court said it was bound to "apply the penalty provision in place at the time [the defendant] committed the crime in question." *Id*. *Carradine* is not dispositive in this case, however, because the saving statute does not apply or, alternatively, if it does apply, the reasoning in *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012), supports the conclusion that the FSA can be  retroactively applied to appellant.

In *Dorsey*, 132 S.Ct. at 2326, 2335, the Court held that the mandatory minimums enacted by the FSA apply to defendants who were sentenced after the FSA's enactment, regardless of when they committed the offense. Analyzing the

10

FSA's "language, structure, and basic objectives," the Court determined that the "plain import," or "fair implication," of the Act's language was that its more lenient penalties were to apply immediately. *Id*. at 2326, 2332. The Court rested its conclusion "primarily upon the fact that a contrary determination would (in respect to relevant groups of drug offenders) produce sentences less uniform and more disproportionate than if Congress had not enacted the Fair Sentencing Act at all." *Id*. To reach that result, the Court had to reconcile the saving statute (1 U.S.C. §109) and a part of the Sentencing Reform Act (SRA) (98 Stat.1987) that is codified at 18 U.S.C. §3553(a)(4)(A)(ii) from which it ultimately concluded that the FSA established the "fair implication" necessary to overcome the application of the saving statute. Since the issues presented in this case implicate the saving statute, the first task is to determine that statute's applicability.

      1.    **If the saving statute (1 U.S.C. §109) does not apply to proceedings under 18 U.S.C. §3582(c)(2), then the FSA applies to appellant who was sentenced before the FSA was enacted.**

      "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment," *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991), and where Congress is silent as to the effective date of a statute, the statute is effective upon its enactment. *Johnson v. United States*, 529 U.S.

11

694, 702 (2000). The FSA is silent as to any effective date; so it would ordinarily become effective on the date of its enactment - August 3, 2010, and *Dorsey* made it clear that the statute retroactively applied to defendants who committed their offenses before that date but were sentenced after it.

Much of the discussion in *Dorsey* centers around the tension between the SRA and the emergency Guideline amendment provisions of the FSA, which favor the application of ameliorative sentencing provisions, and the saving statute (1 U.S.C. §109) which provides that the applicable penalty is the one that is in effect when the offense is committed. If the saving statute does not apply, then there is no tension to resolve. The result is that the FSA, SRA, and the general principle that the law in effect at the time of the decision, require that the FSA's more lenient penalties apply in 18 U.S.C. §3582(c)(2) proceedings.

### a. There is no general or specific saving statute in this case.

The saving statute at issue in *Dorsey* states in relevant part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty ... incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty ...

1 U.S.C. §109. That statute arguably applies to pending prosecutions for the enforcement of a penalty. In *Dorsey*, the Court was required to consider that point

because that case arose from a pending prosecution. Since appellant's appeal arises from a §3582(c)(2) proceeding and not from a pending prosecution, the saving statute is inapplicable.

In *Bradley v. United States*, 410 U.S. 605, 606-607 (1973), the Court considered whether defendants convicted of drug offenses that were committed prior to the effective date of the Comprehensive Drug Abuse Prevention and Control Act of 1970 could benefit from that Act, or whether they were required to be sentenced according to the law in force at the time of the offenses even though their sentences were imposed after it. The Supreme Court noted that "[a]t common law, the repeal of a criminal statute abated all prosecutions that had not reached final disposition in the highest court authorized to review them." *Id*. at 607. The rule applied even when the statute was not repealed, but the penalty reduced. *Id*. at 608. "To avoid such results, legislatures frequently indicated an intention not to abate pending prosecutions by including in the repealing statute a specific clause stating that prosecutions of offenses under the repealed statute were not to be abated." *Id*. In *Bradley*, the Court considered such a saving clause that was included in the statute at issue and it held that "prosecution" in that context meant "prosecution" as it was understood in its legal sense. *Id*. at 609. Thus, the district court in *Bradley* properly rejected the defendants' argument that the statute's ameliorative provisions should have been

13

applied to them because they were sentenced after it went into effect. *Id*. at 609-610.

The case at bar does not involve a pending prosecution and thus it is arguable under *Bradley* that the general saving statute (1 U.S.C. §109) does not apply herein. Indeed, since a §3582(c)(2) proceeding has a "limited scope and purpose." *Dillon v. United States*, 560 U.S. ___, 130 S. Ct. 2683, 2692, 177 L.Ed.2d 271 (2010), it "does not authorize a resentencing," and "permits a sentence reduction within the narrow bounds established by the [Sentencing] Commission." *Id*. at 2694. Moreover, unlike the statute at issue in *Bradley*, the FSA does not contain a specific saving clause. Indeed, an earlier version of the bill contained an express provision that the FSA not be applied retroactively. *See* H.R. 265, 111th Cong. §11 (as introduced Jan. 7, 2009) ("The amendments made by this Act shall apply to any offense committed on or after 180 days after the date of enactment of this Act. There shall be no retroactive application of any portion of this Act."). But the version of the FSA that was enacted into law contained no such provision. This triggers the principle of statutory construction that "[w]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1096 (9th Cir. 2010) (quoting *Russello v. United States*, 464 U.S. 16, 23-24 (1983)). *See also John Hancock Mut. Life Ins. Co. v. Harris Trust and Savings Bank*, 510 U.S. 86, 100-01

14

(1993) (quoting *Russello*, applying it to rejection of Senate draft of bill, and stating that "[w]e are directed by those words [in the final bill], and not by the discarded draft"); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) (noting enactment of House bill rather than Senate bill and stating that "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language"). The deletion of limiting language is exactly what happened here; the earlier version of the bill expressly and broadly barred any retroactive application and the final version of the bill contained no limitation at all. Accordingly, there is neither a specific nor a general saving statute in effect that would prevent retroactive application of the FSA to appellant who was sentenced prior to the FSA's enactment.

> **b.    Since there is no saving statute, the FSA applies to appellant's 18 U.S.C. §3582(c)(2) proceeding**.

The general rule of decision requires "a court . . . to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711 (1974); *see also United States v. Dixon,* 648 F.3d 195, 199 (3rd Cir. 2011) (same); and *RYO Machine, LLC v. United States Department of  Treasury*, 696 F.3d 467, 470 (6th Cir. 2012) (other citations and

internal quotation marks omitted) ("an appellate court must apply the law in effect at the time it renders its decision."). The law that is in effect now - and that was in effect when the district court denied appellant a crack sentence reduction - is the FSA. Applying the FSA's more lenient penalties here would not result in a manifest injustice. Indeed, quite the opposite is true - Congress enacted the FSA to "restore fairness to Federal cocaine sentencing," *see* Pub.L. No. 111-220, 124 Stat. 2372 (Preamble), and remedy what is now recognized as an unfair and unduly harsh sentencing scheme. As shown in the following section of this brief, applying the FSA in appellant's case has no "retroactive effect" as that term is defined in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994).

As noted above, under the common law, the repeal of a criminal statute abates all prosecutions that had not reached final disposition. *Bradley*, 410 U.S. at 607. The rule applies even when the statute was not repealed, but the penalty reduced. *Id*. at 608. While the rule of abatement does not apply to judgments that are final, *see e.g., Bell v. Maryland*, 378 U.S. 226, 230-233 (1964), it can be argued that the judgment in appellant's case is not final for the purpose of §3582(c)(2) proceedings. It is recognized in 18 U.S.C. §3582(b)(1) that a sentence can be modified under §3582(c)(2) and it provides that a judgment of conviction that can be so modified "constitutes a final judgment for all *other* purposes." 18 U.S.C. § 582(b) (emphasis

16

added). The negative implication of the words "other purposes" is that the judgment is not final for the limited purpose of the sentence modification permitted by §3582(c)(2). Since the judgment is not final for §3582(c)(2) purposes, the rule of abatement applies to these proceedings. Therefore, the former mandatory minimum provisions of 21 U.S.C. §841(b)(1) are abated and the FSA's more lenient penalties apply. Given Congress's choice to enact the FSA without a saving clause, the common law rule of abatement and the general rule of decision require the FSA to apply in the case at bar.

> **2.    Even if the saving statute (1 U.S.C. §109) applies to proceedings under 18 U.S.C. §3582(c)(2), the fair implication of the FSA is that its more lenient penalties apply in appellant's case.**

The general rule that a court is to apply the law in effect at sentencing is inapplicable only where applying the statute retrospectively would have the "retroactive effect" described in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). There, the Supreme Court said that when a statute does not contain an "express command" regarding its "proper reach,"

> the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

17

*Landgraf*, 511 U.S. at 280. *See also INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (other

citation and internal quotation marks omitted) in which the  Court stated:

> A statute has retroactive effect when it takes away or impairs vested
> rights acquired under existing laws, or creates a new obligation, imposes
> a new duty, or attaches a new disability, in respect to transactions or
> considerations already past . . .

Under this standard which was earlier articulated in *Landgraf*, 511 U.S. at 269, the

FSA's amendment of 21 U.S.C. §841 does not have any negative retroactive effect

because it does not deprive appellant or the government of any rights; it does not

create a new obligation but instead modifies a former obligation; and it imposes no

new disability. Thus, the FSA does not have a negative retroactive effect and, as

*Dorsey* shows, Congress intended it to have retroactive application. That intent

extends to §3582(c)(2) proceedings.

The saving statute (1 U.S.C. §109) was enacted in 1871 "to abolish the

common-law presumption that the repeal of a criminal statute resulted in the

abatement of 'all prosecutions which had not reached final disposition in the highest

court authorized to review them.'" *Warden, Lewisburg Penitentiary v. Marrero*, 417

U.S. 653, 660 (1974) quoting *Bradley*, 410 U.S. at 607. Such abatements were "often

the product of legislative inadvertence." *Marrero*, 417 U.S. at 660. *See also Hamm

v. City of Rock Hill*, 379 U.S. 306, 314-315 (1964). The saving statute cannot be

18

narrowly interpreted because it "cannot justify a disregard of the will of Congress as manifested, either expressly or by ***necessary implication***, in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908) (emphasis added); *Hertz v. Woodman*, 218 U.S. 205, 217 (1910) (other citations omitted) (the saving statute is "to be read and construed as a part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress."). *See also United States v. Dixon*, 648 F.3d 195, 199 (3rd Cir. 2011) ("Saving Statute cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment") and *United States v. Douglas*, 644 3d 39, 43 (1st Cir. 2011) ("the savings statute may be overridden either by express declaration or necessary implication") (other citation and internal quotation marks omitted).[3]

A broader interpretation of the saving statute is consistent with the principle that in order to determine if a statutory amendment is to be applied retroactively, courts must first look to the Congressional intent in enacting the amendment. *Landgraf v. USI Film Products*, 511 U.S. at 280. That step is essential because "the Saving Statute cannot control when preserving repealed penalties would plainly conflict with the intent of Congress as expressed in a subsequent statute." *United*

---

[3] Although there is a "presumption against retroactive legislation," *Landgraf v. USI Film Products*, 511 U.S. at 265, 272, 286, that presumption can be overcome by the necessary implication exception to the saving statute.

*States v. Dixon*, 648 F.3d at 199. Even with statutory language that is "clearly delineated," exceptions may be implied "where essential to prevent 'absurd results' or consequences obviously at a variance with the policy of the enactment as a whole." *United States v. Rutherford*, 442 U.S. 544, 552 (1979). The Supreme Court imputes to Congress "an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily vindictive." *Hamm v. City of Rock Hill*, 379 U.S. at 313. Accordingly, the savings clause should not to be applied in circumstances that lead to an absurd result. To continue to sentence defendants under a statute that has now been found unfair and unjust is such an absurd result. Application of the savings clause under these circumstances would contravene legislative intent and would frustrate Congress's attempt to "restore fairness to Federal cocaine sentencing," *see* Pub.L. No. 111-220, 124 Stat. 2372 (Preamble), and achieve consistency with the Guidelines.

Congressional intent can be gleaned from the FSA itself. For example, Congress's emergency directive to the Sentencing Commission in Section 8 to 'make such conforming amendments' that would 'achieve consistency with other guideline provisions and applicable law' demonstrates that Congress, at the very least, wanted the mandatory minimums in the FSA to apply to sentences handed down as of its effective date. But, as shown in Argument II of this brief, the reasons given in *Dorsey*

20

for applying the FSA to defendants who committed pre-FSA offenses but were sentenced post-FSA also support the argument that the FSA should apply retroactively to defendants, like appellant, whose offenses and sentencing pre-date the FSA. Similarly, the title and purpose of the FSA (to "restore fairness to Federal cocaine sentencing," *see* Pub.L. No. 111-220, 124 Stat. 2372 (Preamble)) suggest that the statute extends to defendants who were sentenced pre-Act. Thus, Congress's intent would be undermined if the FSA did not apply to defendants, like appellant, sentenced before the statute's effective date because they would be subject to sentences that were determined to be unfair and unduly harsh.

To effectuate the FSA's objective of restoring fairness to federal cocaine sentencing, the statute's retroactivity cannot stop with those defendants who were sentenced after the statute went into effect. It must apply to all defendants who are incarcerated for crack offenses. Indeed, the extent of the FSA's retroactivity was discussed by Chief Judge Easterbrook in his decision to deny rehearing *en banc* in *United States v. Holcomb*, 657 F.3d 445 (7th Cir. 2011).[4]

---

[4] *Certiorari* was granted in *Holcomb*, the judgment was vacated, and the case was remanded for further consideration in light of *Dorsey*. *See Holcomb v. United States*, 132 S.Ct. 62-63 (2012). On remand, the Seventh Circuit affirmed the district court's decision to apply the FSA to the defendants who were sentenced post-FSA. *See United States v. Holcomb*, 475 Fed.Appx. 90 (7th Cir. 2012).

Chief Judge Easterbrook noted that Attorney General Holder issued a Memorandum to all federal prosecutors on July 15, 2011, which directed them to take the position that the FSA applied to all cases in which a sentence was imposed on or after August 3, 2010. *Holcomb*, 657 F.3d at 445 (opinion of Easterbrook, C.J., on denial of rehearing *en banc* (hereafter opinion). As Chief Judge Easterbrook saw it, "the Attorney General has concluded that the 2010 Act is partially retroactive." *Id*. He further explained that "the Supreme Court has never held any change in a criminal penalty to be partially retroactive. The choice has always been binary: retroactive or prospective." *Id*. at 46. Partial retroactivity is patently unfair because its effect can be arbitrary.

> If the 2010 Act is retroactive, then it applies to all pending cases no matter how far they have got in the judicial system; if it is not retroactive, then it applies only to crimes committed on or after August 3, 2010. Nothing depends on the sentencing date, which reflects how long it took to catch a criminal, and the state of the district judge's calendar, rather than principles of deterrence or desert.

*Holcomb*, 657 F.3d at 446-447 (opinion of Easterbrook, C.J.). Chief Judge Easterbrook observed that selecting an effective date for new legislation can be arbitrary and he explained the unfairness of partial retroactivity as follows:

> what's fair about condemning someone sentenced on August 2 to more time in prison than a person sentenced the next day, even though they

committed their crimes on the same date (and may have been co-conspirators)? Suppose comrades in crime distribute cocaine in mid–2009 and are caught promptly. One confesses, pleads guilty, and testifies at the trial of the other, who fights tooth and nail and falsely denies culpability. The first is sentenced on August 1, 2010, the second on September 1. How would it be 'fair' (or even conscionable) to give the lower sentence to the person who refused to accept responsibility for his crimes, just because by dragging out the process that person was sentenced after August 2?

*Holcomb*, 657 F.3d at 451-452 (opinion of Easterbrook, C.J.).

The FSA is remedial in nature and is clearly intended to provide relief from what is now recognized as an unduly harsh and unjustified punishment. The statute should be construed as fully retroactive and in order to "restore fairness to Federal cocaine sentencing," it should be applied to defendants, like appellant, who were sentenced before its enactment. Therefore, the district court's order denying appellant a crack sentence reduction pursuant to 18 U.S.C. §3582(c)(2) must be vacated and the case remanded for resentencing.

**II.    *Dorsey v. United States*, 567 U.S. ___, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) does not prevent the retroactive application of the FSA.**

**A. Standard of Review**

The applicable standard of review is set forth on p. 9 of this brief.

23

## B. Discussion

### 1. Background

In *Dorsey*, 132 S.Ct. at 2335, the saving statute (1 U.S.C. §109) did not bar relief to a defendant whose case was on direct appeal because the Supreme Court found that the FSA's "plain import" or "fair implication" was that "Congress intended the [Act's] new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." The six considerations that led the Court to that conclusion also support the argument that FSA applies to appellant who was sentenced before the FSA took effect.

Under the FSA, appellant would not be subject to a mandatory minimum sentence of 120 months because his case involved 20 grams of crack. (R. 88, MOR, pp. 2-3, Page ID # 291-292). Instead, he would be facing a Guidelines range of 63 to 78 months (total offense level 19 and criminal history category VI) and he would be subject to a maximum term of 30 years imprisonment and 6 years of supervised release. *Id*. at p. 3, Page ID # 292. Although defendants, like appellant, seeking application of the FSA in §3582(c)(2) proceedings were not before the Court in *Dorsey*, it follows directly from the reasoning in that case that the FSA's mandatory minimum penalty provisions applies to all defendants serving sentences for crack offenses regardless of when their initial sentencing occurred.

## 2. The Ruling in *Dorsey*

In *Dorsey*, 132 S.Ct. at 2326, the Supreme Court held that the more lenient mandatory minimum penalty provisions of the FSA applied immediately to defendants sentenced on or after August 3, 2010, the FSA's effective date, including those defendants who had committed their offenses prior to August 3, 2010.[5] The Court's holding in *Dorsey* rested "primarily upon the fact that a contrary determination would seriously undermine basic Federal Sentencing Guidelines objectives such as uniformity and proportionality in sentencing" and it "would (in respect to relevant groups of drug offenders) produce sentences less uniform and more disproportionate than if Congress had not enacted the Fair Sentencing Act at all." *Id*. at 2326.

The Court ascertained congressional intent underlying the FSA by analyzing the Act's "language, structure, and basic objectives." *Dorsey*, 132 S.Ct. at 2326, and it set forth "six considerations" that "taken together," convinced it that Congress intended the FSA's "more lenient penalties to apply to those offenders whose crimes

---

[5] The Court also held that the FSA's new mandatory minimums applied to defendants "who committed an offense prior to August 3 and were sentenced after August 3 but before November 1, 2010—a period *after* the new Act's effective date but before the new Guidelines first took effect." *Dorsey*, 132 S.Ct. at 2335 (emphasis original).

25

preceded August 3, 2010, but who were sentenced after that date." *Id*. at 2331.

First, the Court held that the saving statute (1 U.S.C. §109) does not require an "express statement" for a criminal statute amending a penalty scheme to apply retroactively, as long as the "plain import" or "fair implication" of the statute so provides. *Id*. at 2332. The Court acknowledged that the saving statute purported to require that subsequent Congresses expressly state whether ameliorative criminal statutes would apply to offenses that occurred prior to the enactment of the statute, but noted that "statutes enacted by one Congress cannot bind a later Congress." *Id*. at 2331. Thus, the Court held that the saving statute is not a bar to applicability, as long as courts "assure themselves that ordinary interpretive considerations point clearly in that direction." *Id*. at 2332.

Second, the Court observed that the Sentencing Reform Act (SRA) sets forth a different background sentencing principle that defendants generally do get the benefit of ameliorative sentencing amendments. *Dorsey*, 132 S.Ct. at 2331. It noted that, pursuant to 18 U.S.C. §3553(a)(4)(A)(ii), courts apply the Guidelines that are in effect on the date of the initial sentencing. *Id*. Thus, "when the Commission adopts new, lower Guideline amendments, those amendments become effective to offenders who committed an offense prior to the adoption of the new amendments but are sentenced thereafter." *Id*. The Court "assume[d] that Congress was aware of this

26

different background sentencing principle," and interpreted the FSA in light of it. *Id*.

Third, the Court explained that the language in the FSA implies that Congress intended to follow the SRA's background principle allowing for defendants to benefit from ameliorative sentencing amendments. *Dorsey*, 132 S.Ct. at 2332. It noted that Congress required the Commission to promulgate "as soon as practicable" (and not later than 90 days after August 3, 2010) "conforming amendments" to the Guidelines that "achieve consistency with other guideline provisions and applicable law." *Id*. at 2332 (quoting FSA §8, 124 Stat. 2374). As the Court explained, "[r]ead most naturally, 'applicable law refers to the law as changed by the [FSA] including the provision reducing the crack mandatory minimums." *Id*. at 2332-2333. Accordingly, the Commission reduced the base offense levels for all crack amounts proportionally, using the new 18-to-1 ratio, including the offense levels governing amounts of crack under 28 grams. *Id*. at 2333 (citing Fed. Reg. 66191). "And consistency with 'other guideline provisions' and with prior Commission practice would require application of the new Guidelines amendments to offenders who committed their offense prior to the new amendments' effective date but were sentenced thereafter." *Id*. at 2333 (citing U.S.S.G. §1B1.11(a)).

Fourth, the Court observed that applying the pre-FSA mandatory minimums to post-FSA sentencings would create "disparities of a kind that Congress enacted the

27

[SRA] and the [FSA] to prevent." *Dorsey*, 132 S.Ct. at 2333. Two individuals who were sentenced at the same time, at the same place, and even by the same judge would receive substantially different sentences - based only on the date of their conduct. *Id*. In addition, applying pre-FSA mandatory minimums at post-FSA sentencings would require courts to impose pre-Act sentences after "Congress had specifically found such a sentence was unfairly long." *Id*.

Fifth, if the FSA were not applied, instead of restoring fairness to federal cocaine sentencing, it would make sentences even more disproportionate. *Dorsey*, 132 S.Ct. at 2334. "It would create new anomalies - new sets of disproportionate sentences - not previously present." *Id*. This is because sentencing courts would be required to apply the 18-to-1 sentencing guidelines in conjunction with the 100-to-1 mandatory minimums - resulting in the 100-to-1 mandatory minimums trumping the 18-to-1 guidelines for some but not all defendants. This would result in a sentencing "cliff" wherever a defendant was subject to a 100-to-1 mandatory minimum. *Id*. It would also result in sentencing valleys where defendants with substantially different conduct would be subject to the same sentence. *Id*. at 2337-38, Appendix B to *Dorsey* opinion.

Sixth, the Court explained that there were no strong countervailing considerations. *Dorsey*, 132 S.Ct. at 2335. Taking the six considerations together, the

Court concluded that Congress intended the FSA's more lenient mandatory minimums to apply to post-Act sentencing of pre-Act offenders. *Dorsey*, 132 S.Ct. at 2335.

The Court also recognized that application of the new mandatory minimums to pre-Act offenders sentenced after the Act's effective date would create "a new set of disparities," between pre-Act offenders sentenced before the Act's effective date and those sentenced after it. *Dorsey*, 132 S.Ct. at 2335. But the Court noted that "those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends reopening sentencing proceedings concluded prior to a new law's effective date)" and that not applying the new law to those to whom it could still be applied would "make matters worse." *Id*. This disparity, however, does not foreclose relief in the case at bar because the issue of whether the FSA applies in §3582(c)(2) proceedings was not before the Court in *Dorsey*. As shown below, the six considerations that formed the basis of the Court's ruling that in *Dorsey* also support the conclusion that the FSA applies to §3582(c)(2) proceedings.

3.    **It follows from *Dorsey* that the FSA's mandatory minimum penalty provisions apply to §3582(c)(2) proceedings.**

The six considerations identified by the Court in *Dorsey* apply with equal force

to §3582(c)(2) proceedings. Thus, it follows from *Dorsey* that the FSA's more lenient mandatory minimums also apply retroactively to §3582(c)(2) proceedings.

First, Dorsey makes clear there is no "express statement" requirement for the FSA's mandatory minimums to apply retroactively. Therefore, this Court must look for the "plain import" or "fair implication" of the FSA which was that "Congress intended the [Act's] new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." *Dorsey*, 132 S.Ct. at 2335, As noted above, *Dorsey* involved a direct appeal but that is no reason to think that the FSA's "fair implication" does not apply to §3582(c)(2) proceedings especially in light of the expressed purpose of the statute to "restore fairness to Federal cocaine sentencing." *See* Pub.L. No. 111-220, 124 Stat. 2372 (Preamble). As noted earlier, there cannot be partial retroactivity of the statute. *United States v. Holcomb*, 657 F.3d at 445 (opinion of Easterbrook, C.J., on denial of rehearing *en banc*). The FSA is or is not fully retroactive and the Court found in *Dorsey* that it was indeed retroactive. And, if the "plain import" or "fair implication" of the FSA is to have any real meaning, it should apply to §3582(c)(2) proceedings.

Second, there is a "background principle" favoring retroactive application in the present context that is stronger than in the ordinary sentencing context which *Dorsey* considered. The provision considered in *Dorsey*, 132 S.Ct. at 2332, - 18

30

U.S.C. §3553(a)(4)(A)(ii) - provides for retroactive application of the sentencing Guidelines not expressly, but through a general command that the sentencing court apply the Guidelines "in effect at the time of sentencing." In some cases this leads to the retroactive application of the Guidelines to conduct that predated the new law, as an indirect result of a more general provision. In the sentence modification context there is a different provision - 18 U.S.C. §3582(c)(2) - which, in contrast to §3553(a)(4)(A)(ii), is expressly about retroactivity. Thus, retroactivity is not a "background principle" in these statutory provisions. Indeed, it is plainly in the foreground.

It is even more appropriate to assume that Congress was aware of this specific retroactivity provision than it was for the Supreme Court to assume in *Dorsey*, 132 S.Ct. at 2332, that Congress was aware of §3553(a)(4)(A)(ii)'s requirement that courts apply the Guidelines in effect at time of sentencing. That is so because an earlier version of the bill contained an express provision that the FSA not be applied retroactively. *See* H.R. 265, 111th Cong. §11 (as introduced Jan. 7, 2009) ("The amendments made by this Act shall apply to any offense committed on or after 180 days after the date of enactment of this Act. There shall be no retroactive application of any portion of this Act."). Of course, the version that was enacted into law contained no such provision. And, after the Commission determined that the

31

amendments would be retroactively available, 76 Fed. Reg. 41332-01, Congress could have acted to reject this determination at any time. *Mistretta v.United States*, 488 U.S. 361, 394 (1989). By taking no action to reject or modify the Commission's retroactivity amendment, Congress allowed the FSA Guidelines amendment to become retroactive.

Third, the same language in the FSA that suggested to the Supreme Court in *Dorsey* that Congress intended to follow the SRA's background principles suggests the same thing here. That is the FSA's express directive that there be "consistency" between the guidelines and "applicable law," including the FSA's statutory amendments. *Dorsey*, 132 S. Ct. at 2332 (quoting FSA §8, 124 Stat. 2374). This was so important to Congress that it granted "emergency authority" to the Sentencing Commission and directed to act "as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act . . ." FSA §8, 124 Stat. 2374. The "fair implication" of this desire for consistency is that Congress wanted the new Guidelines to go with the new statute and the new statute to go with the new Guidelines. Just as "[i]t seems unrealistic to suppose that Congress strongly desired to put the 18:1 guidelines in effect by November 1 even for crimes committed before the FSA but balked at giving the same defendants the benefit of the newly enacted 18:1 mandatory minimums," *United States v. Douglas*, 644 F.3d at 44, it seems

unrealistic to suppose that Congress gave the Sentencing Commission discretion to make the 18:1 Guidelines retroactive, but did not intend the same for the newly enacted 18:1 mandatory minimums, with which the new Guidelines were to be consistent. It was up to the Commission whether or not to apply the Guidelines retroactively, but Congress's strong desire for consistency - which is the best way to avoid illogical and unfair results - fairly implies that the statute was to go wherever the Guidelines went.

Fourth, as in *Dorsey*, continuing to apply the pre-Act 100-to-1 mandatory minimums to §3582(c)(2) proceedings under the FSA 18-to-1 Guideline amendments would create the same kind of disparity Congress enacted the SRA and the FSA to prevent. Two individuals with identical criminal histories, who engaged in the same criminal conduct involving the same amount of crack cocaine, and who sought §3582(c)(2) reductions at the same time from the same judge, could receive very different sentences - based solely on when they were initially sentenced. If, for example, appellant had been sentenced after the FSA was signed into law, he would not be subject to a mandatory minimum sentence and would be sentenced within a Guidelines range of 63 to 78 months. (R. 88, MOR, pp. 2-3, Page ID # 291-292). But since he was sentenced prior to the effective date of the FSA he was subject to a mandatory minimum sentence of 120 months. (R. 38, PSR ¶¶72-73, Page ID # 323).

33

This is precisely the sort of disparity that Congress enacted the FSA to prevent and elimination of that disparity was central to the rationale underlying *Dorsey*. Beyond that, it puts the district court in the position of maintaining an unduly harsh sentence "at a time after Congress had specifically found in the [FSA] that such a sentence was unfairly long." *Dorsey*, 132 S.Ct. at 2333.

Fifth, not to apply the FSA mandatory minimums in §3582(c)(2) proceedings would exacerbate disproportionate sentencing. All the examples of disproportionality the Supreme Court set forth in Appendix B in *Dorsey*, 132 S.Ct. at 2336-2338, would occur in §3582(c)(2) proceedings as well. A defendant in criminal history category I who had previously been sentenced to 51 months based on 4 grams of crack cocaine (offense level 22) would have a new Guidelines range of 21-27 months and be eligible for a reduction to a 21-month sentence, but a criminal history category I defendant who had previously been sentenced to 63 months based on 5 grams of crack cocaine and had the same new guideline range of 21-27 months, *see* U.S.S.G. §2D1.1(c)(10) (2011) (post-Act Guidelines setting same offense level for 4-gram and 5-gram crack cocaine quantities), would be eligible for a reduction only to the former 60-month mandatory minimum. *See Dorsey*, 132 S. Ct. at 2337 (Appendix B - Table comparing 1986 Drug Act minimums with FSA Guidelines for Category I offenders with no prior drug felonies). One gram of crack cocaine would effectively triple a

34

sentence.

On the other hand, a criminal history category I defendant with 50 grams of crack cocaine would be eligible for a reduction only to 120 months, despite having a new Guidelines range of 63-78 months, while a criminal history category I defendant with 500 grams would be eligible for a reduction to a sentence of 121 months. *See Dorsey*, 132 S. Ct. at 2337 (Appendix B) Ten times the drugs would add only one month to a sentence. Thus, as in *Dorsey*, application of the 100-to-1 mandatory minimums to defendants eligible for the 18-to-1 Guidelines "would produce a crazy quilt of sentences, at odds with Congress' basic efforts to achieve more uniform, more proportionate sentences." *Id*. at 2334-35. "Congress, when enacting the [FSA], could not have intended any such result." *Id*. at 2335.

Finally, the Court in *Dorsey*, 132 S.Ct. at 2335, found no sufficiently strong countervailing considerations. Similarly, there are no such considerations here. In fact, one of the countervailing considerations considered in *Dorsey* would be eliminated by retroactive application in §3582(c)(2) proceedings. That is the concern about disparity between pre-FSA offenders already sentenced at the time the FSA became law and those pre-FSA offenders not already sentenced at that time. *Id*. Eliminating that sort of disparity is the fundamental purpose of §3582(c)(2) and retroactivity of the FSA mandatory minimums in §3582(c)(2) proceedings will

35

advance that purpose by letting those pre-Act offenders who were sentenced earlier receive the benefit of the Act. *See Dorsey*, 132 S.Ct. at 2335, (recognizing that one way in which to eliminate such disparities would be for Congress to re-open "sentencing proceedings concluded prior to a new law's effective date"). Finding a Congressional intent that courts apply the FSA mandatory minimums in §3582(c)(2) proceedings thus strengthens and is more consistent with a Congressional intent that they apply retroactively in original sentencings.

The Supreme Court has noted that "§3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." *Dillon v. United States*, 130 S.Ct. at 2792. That objective can be fulfilled by applying the FSA to those proceedings. Congress's goals of consistency, avoiding disparity, and eliminating unfairness establish a "fair implication" that it intended the FSA mandatory minimums to apply to §3582(c)(2) proceedings just as much as they establish such a "fair implication" in the context of an original sentencing. The FSA mandatory minimums should apply along with the FSA Guidelines in §3582(c)(2) proceedings just as they do at an original sentencing. If the FSA were applied to appellant he would not be subject to the original mandatory minimum sentence of 120 months. Indeed, he would not be subject to a mandatory minimum sentence because he was accountable for 20 grams of crack. (R.

36

88, MOR, p. 2, Page ID # 291). *See* 21 U.S.C. §841(b)(1)(C). His Guidelines range would be 63 to 78 months (total offense level of 19 and a criminal history category of VI). *Id*. at pp. 2-3, Page ID # 291-292. Thus, applying the FSA to him would have a substantial impact on his sentence.

For the foregoing reasons, appellant respectfully submits that the Supreme Court's decision in *Dorsey* does not prevent the retroactive application of the FSA to §3582(c)(2) proceedings. Indeed, as shown above, *Dorsey* fully supports the conclusion that the FSA applies in such proceedings.[6]

---

[6] On pp. 16 - 20 of his principal brief, appellant argued that various principles of statutory construction support the conclusion that the FSA applies retroactively to §3582(c)(2) proceedings. That argument is incorporated here by reference.

**Conclusion**

For the foregoing reasons, the appellant, Cornelius Demoriss Blewett, by counsel, respectfully submits that the final order denying a sentence reduction must be vacated and the case remanded for resentencing.

s/ Frank W. Heft, Jr.
s/ Jamie L. Haworth
Office of the Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202
(502)584-0525

Frank_Heft@fd.org
Jamie_Haworth@fd.org

Counsel for Appellant

**Certificate of Compliance**

I certify that this brief complies with the type-volume limitation under Fed.R.App.P. 32(a)(7)(C)(i) and 6 Cir. Rule 32(a) by containing 8945 words.

s/ Frank W. Heft, Jr.

**Certificate of Service**

I hereby certify that on January 22, 2013, I electronically filed the foregoing brief with the clerk of the court by using the ECF system. I also certify that on January 22, 2013, the foregoing brief was served on the following counsel of record at her email address through ECF: Candace G. Hill, Assistant United States Attorney at Candy.Hill@usdoj.gov.

s/ Frank W. Heft, Jr.

**Cornelius Blewett's Addendum and Designation of District Court Documents**

| Record No. | Description of Document | Page ID # |
|---|---|---|
| 8 | Indictment | 23-33 |
| 20 | U.S. Notice pursuant to 21 U.S.C. §851 | 60-61 |
| 26 | Plea Agreement | 66-76 |
| 27 | Order re Guilty Plea | 77-80 |
| 38 | Presentence Investigation Report (PSR) (sealed) | 304-328[7] |
| 39 | Judgment and Commitment Order | 147-153 |
| 71 | Order re Filing of Memorandum of Recalculation (MOR) (6-5-08) | 261-262 |
| 72 | Memorandum of Recalculation (MOR) (sealed) (6-5-08) | 294-296[8] |
| 79 | Order Denying Crack Sentence Reduction (2-20-09) | 269 |
| 88 | Memorandum of Recalculation (MOR) (sealed) (1-4-12) | 290-293 |
| 90 | Order re Filing of MOR (1-5-12) | 371-372 |

---

[7] The PSR is included in the Memorandum of Recalculation (MOR). *See* R. 88, Page ID # 290-293.

[8] This MOR is included in the most recently filed MOR. *See* R. 88, Page ID # 290-293.

**Appellant's Addendum and Designation of District Court Documents (cont.)**

| Record No. | Description of Document | Page ID # |
|---|---|---|
| 93 | Defendant's Response to MOR (sealed) | Unavailable |
| 97 | Order Denying Crack Sentence Reduction (2-21-12) | 392-393 |
| 98 | Statement of Reasons (SOR (sealed) | 329-331[9] |
| 100 | Notice of Appeal (2-29-12) | 399-400 |
| 104 | Transcript of Sentencing Proceedings on 5-23-05 | 427-440 |
| 108 | Redacted Transcript of Guilty Plea Proceedings on 1-21-05 | 447-469 |

---

[9] The Statement of Reasons (SOR) is contained in the MOR. *See* R. 88, Page ID # 290-293.